v. Garland? Yes, Your Honor. Give us just a moment. Yes, thank you very much. Okay, you may proceed. Thank you so much. Yes, may it please this Honorable Court and the Justices of the Second Circuit. This matter, Daljeet Singh v. Attorney General, is a petition for review brought by the petitioner Daljeet Singh from the decision of the Board of Immigration Appeals that denied his appeal from the decision of the immigration judge, which denied his application for relief from removal. Mr. Singh's application was brought under 8 U.S.C. 1229B.1. It was an application for cancellation of removal for non-permanent residents. This statute provides for a pathway to legalization with specific requirements. One of those is that a person needs to have 10 years of continuous presence in the United States, good moral character, and also to have qualifying relatives who would suffer exceptional and extremely unusual hardship to the non-citizen. The government claims your client forfeited the medical hardship claim because while mentioned in your brief, it wasn't in the argument section of your petition. Can you share your position on it? Your Honor, usually the petition itself is a pro forma, very short statement saying under what statute the petition is brought. It's always understood that these arguments are going to be more fully developed in a brief, and that's what we did. We brought these arguments out in the brief that the judge used the wrong legal standard and that the use of the wrong legal standard is under the jurisdiction of this court as per 8 U.S.C. 1252A.2.D., which allows this court to review determinations that bring up a legal question or a constitutional claim. Could you point out in what way you think the agency misapplied the concept of exceptional unusual hardship? The immigration judge, Lisa Ling, based much of her decision on unsupported speculation, not on established facts. You have the obligation of showing that this was exceptional unusual hardship, and I read her decision to consider the claims made as to the health of the children, the educational opportunities for them if they were to move to India with their father. They read little Punjabi, and they speak Punjabi, but they're not fluent. And then the source of financial support, and she discussed how she envisioned if the father were to return to India how their mother, who lives with their brother-in-law and, I guess, sister-in-law, would be able to make their way. And she commented that these are not unusual or highly unusual or exceptional hardships, and I didn't understand how you distinguish them from the more ordinary circumstance where the removal of a parent who is the source of some economic support, these relatively mild physical conditions, obviously it would be very painful for him to be removed, but why is it exceptionally or extremely unusual hardship? And did the district court, the IJ, discuss that? So in what way did her discussion fall short? Pointing to things in the record that you made to establish, to carry that burden. Your Honor, I believe that it is in the record the conversation in the transcript of the trial hearing. Mr. Singh was questioned regarding his job prospects in India. He said he's not going to be able to get a job. He also stated that, I believe that on administrative record page 356, I will try to find the work, but my father tells me there's not much work there. It's not easy to find a job. So maybe let me ask the question a different way. How would you define exceptional and extremely unusual hardship in a way that you think your client wouldn't meet? Your Honor, it's extremely difficult because it's extremely fact-specific for each individual case. However, I would define it as the way Congress seems to view it, that exceptional and extremely unusual hardship goes beyond extreme hardship, which in turn goes beyond a normal disruption. So then we're back to Judge Carney's question, where she asked, what do you think is your best information or the best evidence in the record that shows that it would be an exceptional and extremely unusual hardship? Well, Your Honor, there were statements in the record regarding the children's ability to speak Punjabi. There were also documentation in the record of poor air quality in India and about the child's surgery. I believe it was a sinusplasty, some medical procedure that the children with their asthma, allergy, this would be intensified. I'm looking here. I believe this was at the record as 468 to 472, 488 to 491, 492 to 499. Background material regarding the extremely poor air quality in India, which causes chronic respiratory diseases, including bronchial asthma. Also, yes, I'm sorry. Go finish. Also, in terms of the children's inability to speak Punjabi and that they've never been to India, that's on the record at 349 to 350. I thought it wasn't clear that the children would go with him. I thought it was plausible, as the IJ seemed to say, that they might stay with their mother and with their uncle and aunt in the United States, and their father alone would return. Is that not a plausible scenario? Your Honor, I believe it was stated on the record the inability of the mother to handle the finances and the burden of the household by herself. I see a citation to Administrative Record 377. The wife testified that I cannot do it alone by myself. She only was employed part-time, could not make enough money to support a household. I don't mean to imply any lack of sympathy for the great hardship on any family that it would impose to have a parent removed or the family moved to a place they had never lived before together. But you have the burden of showing that the statutory standard is met and that the agency didn't consider the record adequately or there's something the agency overlooked in making its own assessment. And I'm still not hearing what the agency overlooked because the things you just mentioned, she discussed. Your Honor, we feel that the judge, the Honorable Lisa Lane, went too much into impermissible speculation. She was speculating. Yes, yes, I'm sorry. I apologize. No, you don't need to apologize. It's hard when we're not here and you can't see when we're about to jump in. Related to that, we do not yet have a standard. You have not offered one about how deferential our review should be of the IJ's application of exceptional and extremely unusual hardship. We do know that the Supreme Court in Wilkinson said that it's deferential but didn't clarify what that means. Is that material here? Yes, Your Honor, I would say it's very material. And after Wilkinson, we've got Loper-Bright. And I think Loper-Bright is important here because it says that the court can bring its independent judgment and there's no deference to the agency's interpretation of the statute. In other words, even if the EOIR decides to interpret exceptional and extremely unusual hardship in one manner, this court or any reviewing court can independently look at the statute and make its own determination of what constitutes exceptional and extremely unusual hardship. There's no longer a Chevron deference to the agency's interpretation of the statute. Okay, thank you. We will hear from you on rebuttal. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court, Jessie Carlson for the government. Your Honors, we believe this petition should be denied because Petitioner simply doesn't meet the statutory requirements for cancellation of removal. The agency correctly concluded that he did not establish exceptional and extremely unusual hardship based on his removal and how that would impact his United States citizen children, who I believe now are in their late teens or early 20s. The primary hardships asserted related to the financial support of his children, medical needs, and educational needs. And those things are all certainly relevant, but as Your Honors pointed out, the court, the IJ, looked at all of these things very thoroughly in her decision and she assessed all of the relevant facts cumulatively and she determined that he simply did not meet the standard. And there was no error in that determination. The same question that I asked your colleague, which is that the Supreme Court, as you know, said that we have jurisdiction to review application of the standard to facts, but it said the review should be deferential. What does that look like? Your Honor, the government at this, obviously, as you mentioned, this Court has not clarified that deferential standard. But traditionally, when it pertains to factual determinations by the IJ, the standard of review is substantial evidence. And because this is, while it is a mixed question of law and fact, it is primarily a factual determination. So it's the government's position that deferential would more than likely be substantial evidence review as it is in other. It's so bizarre, though, because the Supreme Court is certainly aware of the substantial evidence standard and the fact that they did not suggest that that was what deferential meant, I think, leads to it being something else. That's not the government's view. The government's view is that it would be substantial evidence? Well, because of the primary factual nature of the determination, that would be the logical, you know, something like substantial evidence would be the logical assessment, given the way these things have been determined before. What the Supreme Court did say in Wilkinson is that the factual findings, IJ's factual findings, are a matter outside of the Court's jurisdiction. In addition to, you know, So that is one important point that the Court made there, that those determinations, you know, certainly the Court can look at the application of those facts to the statute. But the underlying determination as to whether or not the medical issue was severe, whether or not things might happen, you know, differently when the individuals go to the other country, all of those determinations by the IJ are not within the Court's jurisdiction per Wilkinson. So that is something to point out as well. But more importantly, the agency... over this appeal. Correct. As far as you have jurisdiction to look at the application of the statute in this situation, so whether or not the Petitioner... Then we do. Correct, Your Honor, in that whether the Petitioner established the exceptional and extremely unusual hardship. But what Petitioner takes issue with... Applying the facts that were found to which we owe deference to the statute. That's why we have jurisdiction. Correct. But as Wilkinson points out, the application is the established or undisputed facts. And so what Petitioner takes issue with is the IJ's evaluation of those facts and essentially the weighing of those facts, which is a little bit different. So I think Wilkinson parses that out as to how that's a different assessment. I have just... And this might be completely irrelevant, but there are dozens and dozens of languages spoken in India, which is a great and sprawling country. Is English one of the official languages of that country? Your Honor, I'm not sure what the official languages are there. Obviously there are many spoken languages. I think in this case... I didn't know and you don't know. Yeah, unfortunately I don't know. It may very well be in the record in the country reports, and I didn't focus in on that. But I do know that there are many languages spoken there. And I do think it's important to, as Judge Carney I think pointed out, while it's certainly unfortunate that there are... There's definitely impact when an individual is removed from the United States on their family. But unfortunately, in this case, the standard is such that Congress designed it to be substantially beyond what is ordinarily expected with a removal. So this is a very significant... It's a high burden that has been set forth, and it's something that simply hasn't been met by Petitioner in this case. I want to move to your exhaustion argument. I understand your argument to be that Singh didn't exhaust his financial and education-related hardship question before the BIA. But we have case law that says that if the Petitioner didn't bring it to the BIA's attention, but the BIA nevertheless considered it here, we're not precluded from reading it. That would be Uddin v. Garland. Are you familiar with that case? Am I reading it wrong? Your Honor, I don't recall that case specifically, but I think an important point here is that even if Your Honors disagree with our assertion that these claims were not exhausted, the Petitioner still fails on the merits. If you go right past that and look at the merits of the case, the Petitioner still does not meet his burden to demonstrate exceptional and extremely unusual hardship. Can you help us elucidate, based on case law, what would qualify as a medical hardship that would be extreme and unusual to be considered? Yes, Your Honor. If you find any, then clearly that's a problem as well, right? Well, I mean, Wilkinson talks about medical hardships specifically in that case. It is an issue it talks about there. And I can't remember specifically what the medical hardship was there. The precedential board decisions in this situation that the IJ relied on do kind of go through the various, not necessarily medical per se, if I recall. I think there may have been one that involved ADHD, an ADHD diagnosis, which I don't believe was considered an exceptional hardship. But really, you know, kind of some of the comparisons with the board's cases that were relied on here, you had, I think, the one case where that Petitioner talks about a matter of raciness. You had a single mother who was not married, who did not have any support from her family, and who was, you know, the facts were very distinguishable from this case. She had no relatives in Mexico, which was the country at issue there. In this case, Petitioner is married and has a spouse who does have a job. You know, the children are older. They have family living with them, aunts and uncles. There's family, several family members in India. The facts are very different as far as the kind of hardship that would be imposed. So in closing, for the reasons discussed in our brief and during this argument, it is our position that your owners should deny the petition for review. Thank you very much. Ms. Resnick, you've got two minutes. I think the key phrase here is established or undisputed facts. What we have here is a case where the judge did not rely on established or undisputed facts, but unfortunately the judge indulged in impermissible speculation. In Wilkinson, the court talks about the application of the statute to established or undisputed facts. But here, there are disputed facts. There is speculation by the judge as to the amount of support that the Petitioner's family would have in India. There is speculation by the judge about how the children would manage in India. There is impermissible speculation by the judge regarding how much help the mother would get from family members in the United States. Isn't there speculation really on both sides? Because we're talking about not what has happened, but what might happen. Yes, Your Honor, we understand that, but the point is that the application of the law should be to established or undisputed facts, and that's not what happened here at the lower court level. The judge relied on impermissible speculation to reach her conclusion. If that is all of your argument, you do have 20 more seconds left. We pray that Your Honor and this honorable court would please grant the petition of the Petitioner and remand this case back, reverse the decision of the board, remand this case back to the board to be sent back to the trial judge for a new trial on the facts and merits of this case. Thank you to both of you, and I will take this case under review. Thank you, Your Honor. Thank you.